This honorable appellate court for the 2nd District is now open. The Honorable Justice Robert McLaren presiding, along with Justice Susan Hutchinson and Justice George Bridges. The case is No. 2-19-0602, People of the State of Illinois plaintiff-appellant v. Latoya Anderson, defendant-appellee. Arguing for the appellant, Ivan O. Taylor, Jr. Arguing for the appellee, Jason M. Kunowski. Thank you. Mr. Taylor, you may proceed. Thank you, Your Honor. My name is Ivan O. Taylor, Jr., I-V-A-N-O-T-A-Y-L-O-R-J-R. I'm representing the people in this case. The trial court erred when it granted defendants motion to suppress, relying exclusively on this court's decision in People v. Mueller for the following three reasons. First, Mueller does not apply to this case because this defendant was on a long urban straightaway free of any obstructions when she repeatedly drove on a dividing line with both the front and rear wheels of her vehicle. Contrarily, the defendant and Mueller was on a roadway in which this court stated was rife with twists and turns, which made it difficult for that defendant to avoid contacting the lane lines and provided an innocent and obvious explanation for that defendant's brief touches of those lines. These cases are vastly different from each other. Second, if this court finds that Mueller controls this case, that decision should be re-evaluated and ultimately abandoned as contrary to legislative intent and statutory construction. Finally, if this court reaffirms Mueller and believes that the facts of this case are indistinguishable from the Mueller facts, the people submit that the officer Buckle's good faith belief that the defendant violated the proper lane usage statute should compel reversal of the trial court's suppression. The trial court's grant to a defendant's motion to suppress was based solely on this court's holding in Mueller, which stated that dividing lines are part of the lane and that a person cannot be in violation of a proper lane usage unless their tires completely cross the line as opposed to merely driving upon it. As an initial matter, this case is distinguishable from Mueller. If Mueller and that defendant were driving on a road, curvy road, in which staying nearly as practicable entirely within a single lane would have been very difficult. Here, the road was completely straight and free of any obstruction and did not provide this defendant with the innocent explanation of which the Mueller defendant was able to avail himself for his potentially questionable driving. So far as this court may conclude, that the vast difference in the roadway composition between this case and Mueller does not warrant a slight departure from Mueller's holding, but people suggest that Mueller should be abandoned as it runs counter to legislative intent. Now, there can be no question that the overall legislative intent of the Illinois Vehicle Code is to facilitate safe traveling for drivers upon Illinois roadways. Moreover, the ultimate purpose of statutory interpretation is to ascertain and give effect to the legislator's intent. In doing so, the court presumes that the legislator did not intend an absurd result. The statute at issue here states, A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. Mueller's holding fails to enforce legislative intent and leads to absurd results. Namely, defining a lane as including dividing lines and to hold that vehicle must completely cross the line in order to violate the proper lane usage statute allows for vehicles traveling in opposite directions on the same roadway to each drive upon the shared lane line between the opposing lanes without violating the statute. In effect, it is not absurd to follow the drivers who repeatedly drive on the dividing line for no obvious reason but fail to completely cross the lane line, but not be able to pull over those vehicles until they fully cross the lane and head into oncoming traffic. This severe risk of head-on collisions cannot be a prerequisite of a valid stop for improper lane usage. People have presented multiple foreign jurisdiction authorities that hold such a risk as unacceptable. Among those cases, the Minnesota Court of Appeals and Cruz v. Commissioner of Public Safety analyze their identical improper lane usage statute and that it cannot be correct for two opposing vehicles to be able to simultaneously drive upon the dividing line and not be in violation of the proper lane usage statute. Again, the purpose of vehicle code is to promote safety on the roads, which cannot happen if the definition of lane includes the dividing lines, allowing opposing vehicles to legally occupy the same space. Even if this court clings to Mueller and finds the disparate facts of this case similar enough to apply Mueller, good-faith exceptions should compel this court to reverse the trial court. The prime purpose of the exertion rule is to deter future unlawful police conduct and thereby effectuate the guaranteed Fourth Amendment against unreasonable searches and seizures. In a case-by-case analysis, the good-faith exception should apply when a police officer acted with objectively reasonable good-faith belief his action was within the law. As stated by our Supreme Court in People v. Lafleur, in determining whether the good-faith exception applies, a court must ask the objectively ascertainable question whether a reasonable, well-trained officer would have known that his action was illegal in light of all the circumstances. Prior to Mueller, no Illinois case held that a lane included the dividing lines and that vehicles' tires must completely cross the dividing line in order to violate the proper lane usage statute. The primary case relied upon by the defendant to foretell Mueller's holding and to negate the officer's good-faith, in People v. Leyendecker, does not support the defendant's position. In Leyendecker, it involved a single momentary crossing of a fog line, not a center dividing line. In addition, when this court affirmed a motion to suppress in Leyendecker, it noted that there was no testimony as to whether that defendant was driving as nearly as practicable within the lane when they crossed the fog line on a curvy road with poor visibility. Simply put, crossing a fog line does not entail the same kind of danger to other drivers as does driving upon the dividing line between lanes of opposing flowing traffic. Moreover, as conceded by the defendant, the Illinois Supreme Court in People v. Hackett departed from Leyendecker and reiterated that when an officer observes a deviation from the lane of travel for no obvious reason, that officer is justified in conducting a Terry Stop. The court further stated that a police officer can effect a lawful Terry Stop without first considering whether the circumstances he or she observed satisfy each element of a particular offense. Officer Buckler acted in good faith when he stopped the defendant who was repeatedly driving on the dividing line with both her front and rear tires on a straight road for no obvious reasons. His understanding of the law was that driving on the dividing line was a violation of the improper lane usage statute. No legal authority countered this viewpoint, this viewpoint which the trial court clearly shared. After initial hearing on the motion to suppress prior to Mueller, the trial court denied the motion as it understood the law as Officer Buckler did, that driving upon the dividing line even without forecrossing a violated statute. When this court's decision in Mueller was issued, it changed the landscape for both police officers and judges. In light of these circumstances, Officer Buckler would not have known that his observation of justifying a stop of a defendant's vehicle was not supported by this court's later interpretation of the statute. For the foregoing reasons, the people asked this court to reverse the trial court's suppression order and remand for further proceedings. Are you done? Yes, Your Honor. Do you have any questions for me? The questions will start with Justice Hutchinson. Sue? Thank you. The lane markings are on the road. They are not dependent upon topography or anything of that nature, correct? That is correct, Your Honor. So why is the topography of this particular road so critical to distinguish the case? A lane marker is a lane marker, isn't it? That is true, but for how vehicles are. And that's why the purpose of the statute is supposed to stay nearly as practicable within the lane. But the topography of the road can change what is considered nearly as practicable. If a road is mountainous or curvy or twisty, trying to stay within a set lane line becomes more difficult. So when one crosses that sort of situation, it wasn't nearly as practicable to stay within a single lane. When you're on a straight urban roadway, which is designed to not have any form of deviation within it, leaving the lane at that point, there is no reason for it. All right, what time of the day or night did this occur? This happened at night. I cannot tell you the exact time of day at the moment, but I do know it was completely dark, judging by the video. Okay, and so why doesn't darkness play into your discussion about, you know, the flat, you know, straight road? I mean, it's dark. Because the vehicle, well, the vehicle should be, at nighttime, the vehicle should be using your headlights to illuminate. Also, in an urban setting, there are streetlights to also illuminate the roadways as well. Is this in the urban area of Northern, or is this out more toward the, oh, I'll say the outlying area of DeKalb and the campus? This stop happened right in the middle of the campus on Annie Glidden. It was within a mile north of Lincoln Highway. Well, the stop happened there. Where did the violation occur? The violation occurred closer to, just north of Lucinda Avenue on Annie Glidden. Okay. All right. Was there any oncoming traffic noted by the officer at this time? I do not believe the officer noted any oncoming traffic at that time. The video, I don't, I'm not sure the video shows any oncoming traffic. Well, you indicated that you're, you know, that you're saying Mueller can lead to absurdity and certainly not safe conditions, as noted by the Minnesota court, because if two vehicles are touching that particular line, that is truly unsafe, correct? Correct. Well, if there isn't any oncoming traffic, what is the particular issue with safety? Well, the police shouldn't have to wait for there to be oncoming traffic in order to pull someone over for driving on a dividing line. Sorry, Your Honor.  No, finish up, please. If, in this case, the defendant is driving on a dividing line, even if there was oncoming traffic, that's still, it's still unsafe for them to be in that position. The police should not have to wait for there to be a head-on collision or a near head-on collision in order to effectuate a stop. All right. I don't have any other questions at this time, Justice, and thank you, counsel. Thank you. Thank you, Susan. Justice Bridges, do you have any questions? I do, thank you. Counsel, Mueller held that the mere touching of the lane line doesn't constitute an illegal lane usage, correct? That's correct. And so my question is, isn't that what we have here, all that we have here in this case? Well, Your Honor, in Mueller, that individual was touched not only in the center dividing line, but also the fog line. In this case, the defendant was touching only the dividing line between opposing traffic. As for Mueller's holding, when the stop occurred, Mueller wasn't decided yet. It's also part of our argument as to why the good-faith exception should apply, because even if Mueller, even if this court continues to use the good-faith exception, it should allow this stop, as at the time, the officer was following the established law. And since you brought up the good-faith argument, this is the first in your brief, was the first time that you raised this matter on appeal, is that correct? In the briefing, initially it was written that the good-faith argument wasn't presented below. However, from re-evaluating the words by the prosecutor, while the prosecutor never stated explicitly that he was arguing the good-faith exception, he did argue that the officer was abiding by what he knew at the time. The officer did testify for believing that he thought the action that he observed was a violation of the law. So while the phrase good-faith was never used in the trial court, the argument was still presented. What facts or law did you cite that should compel this court to abandon the court's policy of adhering to precedent? For adhering to the establishment decision, the policy-wise, just the general policy, the purpose of the Illinois Vehicle Code is to uphold the safety on Illinois roads. And pretty much every state's vehicle code is based on the same model code. And other states utilize the same exact statute and come to a decision where the purpose of the safety, driving on the line, especially the byline for opposing traffic, is a violation of the proper lane usage. Thank you, Mr. Taylor. Justice McLaren, I have no further questions. I'm going to relinquish it over to the author of Mueller. Thank you. Mr. Taylor, or is it O. Taylor? Mr. Taylor is fine, sir. Okay. I think Mueller indicated that the statute didn't really define what a lane was. Is that not correct? That is correct. The statute did not define the term lane. And so Mueller was the first case that defined what a lane was, at least insofar as in relation to markings or paintings on the road. That is correct, Your Honor. If that's correct, then how could the police officer have any good faith belief as to what actually is a lane? The police officer had good faith belief in what is considered a lane just from his observations as an officer and also just as a citizen who has a driver's license. Driving just on the roads, one would think that if someone is not between the lines, they're not in their lane. And while no court had defined lane as – had made a special definition of what lane was, as noted in Mueller and also in the briefing, the term lane road is used in other places, especially for the books for driving tests as well. When was Mueller decided? Mueller was decided in 2018. Yeah, the order was filed in 2018. Okay. If the legislature didn't wish to abide by that definition, is it possible or even probable that it would have enacted, implanted, emplaced, stated somewhere either in the statute of rule of regulation of IDOT what exactly a lane should be defined as as opposed to the definition ascribed to in Mueller? While the legislature can or basically make a new law to disavow a court's holding, the legislature moves at its own pacing and it could be that it's something that they will get to at their own time. So while you are correct, the legislature could have looked at this court's ruling, made a new law to define lane, it chose not to do so yet. Didn't Mueller refer to the rules of the road as defining what a lane was and didn't it also discuss IDOT rules and regulations relating to the configuration of roads in the state of Illinois? While it did so, neither of those two places defined a lane as including the markings. It just noted that a lane road is a road that has markings on it. So, although I don't think we're bound by IDOT regulations or rules of the road, you're not aware of any changes, are you? No, I'm not aware of any changes as to whether IDOT rules of the road, if they specified precisely whether a lane includes the markings or not. Okay. And was the term brightline test used in your brief? I don't believe the term brightline test was used in my brief. Okay. What was the brightline test before if there was one? As to whether someone violated proper lane use statute? Yes. May I conclude, Your Honor? Yes, you may. I believe, at least from as exhibited by the trial court and Officer Buckle, like when someone is driving upon a line as an example of improper lane usage, as would be also fully across the line be an example of improper lane usage. At the time before Mueller, that was understood to be a violation of the statute. Just a point of order, Your Honor. That was not the official court's timer. You are, of course, at liberty to continue to question. I thought to myself, I must not have turned off my alarm, but then I realized that I did. There will be five minutes available, Mr. Taylor, for your rebuttal. Thank you. Mr. Kunowski, you may now proceed. Thank you, Your Honor. Jason Kunowski, K-U-N-O-W-S-K-I, on behalf of the appellee Latoya Anderson. May it please the court. Your Honor, I have a few points I would like to begin with. First, it appears that the state is conceding a number of facts in this case. First, in the state's briefs, they are conceding that Ms. Anderson never left her lane. Additionally, judges, in the first brief by the state, the initial brief, there was an indication that no good faith argument was made to the trial court at all. There's a concession right there as well. Secondly, judges, I would indicate that the law from Mueller, Ms. Anderson's case, the law remains as it was, as can be seen in Leyendecker and Hackett. In improper lane use, there would have to be an actual deviation of the lane, and Leyendecker goes further to indicate that there would have to be an inquiry into practicability. Hackett, from 2012, doesn't go with the practicability concern as much as a lane deviation would be required. Here, Your Honors, there simply was no lane deviation by Ms. Anderson, and the trial court reviewed that and made that a finding of fact, that there was no lane deviation, so that there can be no reasonable suspicion of improper lane use as required by People v. Hackett. Third point I would like to make to Your Honors is that the Illinois Supreme Court denied the petition for leave to appeal in People v. Mueller. This was in 2019. That's important because had Mueller created new rules or new law or a new test, then certainly it would follow that the Illinois Supreme Court would take up that petition to leave to appeal to correct any sort of discrepancies in between a case and prior Supreme Court holding For example, found in People v. Hackett. Your Honors, as far as the good faith exception goes, I would circle back to the initial arguments I made that in the state's first brief, they conceded that the state did not make any sort of good faith arguments at the trial court level, and I'd like to expound upon that further. Essentially, Your Honors, the state put all their eggs in one basket, where we as lawyers were taught that you simply don't do that. The idea is, stemming from our time in law school, that the litigants are to make all of their arguments to the trial court. The purpose for that is to promote finality in litigation. There's no additional bites at the apple here. To allow a good faith argument when one was not argued at the trial level would be akin to for the appellee to have this motion to suppress evidence hearing, question the officer, have the state cross-examine the officer and rest, have the motion denied, and then ask the judge, well, Your Honor, if you are going to rule that way, I would like to put my client on the stand for testimony there. That simply doesn't make any sense. Further, Your Honors, there's not anything in the record to say that there's good faith or bad faith, because that simply wasn't argued. It would all be supposition and assumption and speculation at this point, where the appellant could argue good faith. I could say, well, there is bad faith, and who's to say either one of those instances is true. It's just the good faith argument is not supported by the record in any event. Your Honors, we would submit that the trial court judge's ruling was correct under the law. It should not be disturbed. The findings of fact were not against the manifest weight of the evidence. Even looking at the case through, looking at Ms. Anderson's case through the lens of Mueller and the cases that came before it, the idea that somebody has not left their lane until crossing over a line as opposed to touching is not a new and novel concept. Lyon-Decker was decided in 2003, Hackett in 2012. Your Honors, we submit that the trial court's ruling after the motion to reconsider was filed was correct under the law that existed at the time that Ms. Anderson was stopped. Further, Your Honors, as far as if the court were to entertain a good faith argument, Officer Buckle does not indicate how he knew of what the law was at the time. He convolutes some arguments into one to the point where he had to be questioned by the trial court itself. The court conducts its own examination and then later on indicates that, well, that's not what he said before. The trial court comes back around and finds that there was no lane deviation. Therefore, there was no reasonable suspicion for improper lane use. Thus, the stop of Ms. Anderson was improper and illegal. For all of those reasons, the appellee asks Your Honors to affirm the decision of the trial court upholding the granting of the defendant's motion to reconsider the denial of the motion to suppress evidence. I am now concluding my time and ready for questions. Thank you, Your Honors. Thank you. Justice Hutchinson, do you have any questions? Yes, just a couple. Thank you. Counsel, Justice McLaren had asked opposing counsel what, if any, kind of test was used prior to Mueller defining the lines. You mentioned something in Leyendecker that it was as nearly as practicable. I think that was correct, right? Yes, Your Honor. That is my understanding of Leyendecker. Nearly as practicable, though there was not a definition of what is a lane in Leyendecker, but what could simply be used as a test for improper lane use. Lane deviation and practicability in Leyendecker that would be found there. Okay. Now, there is slightly different language in the statutory authority. I don't believe it's as nearly as practicable, but it mentions within safety or something of that nature. Within the limits of safety. Do I have that correct? I'm not sure, Your Honor. I'm not aware of any changes to 11-709A. I'm simply not aware if there has been a substantive change to that point. There is a situation where people are allowed to leave their lanes, for example, obstructions in the roadway, potholes, animals, somebody darting out on a bicycle, but that didn't occur in this case. All right. Well, I apologize a bit. A vehicle shall be driven as nearly as practicable within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. Now, understanding that your client did not leave her lane, were there any safety considerations at the particular time of this stop? I don't believe so, Your Honor. I don't recall any traffic coming the other direction. There were not a lot of vehicles on the road at that time. It was later at night. I think it was sometime after 2 in the morning. It does appear that the stop occurred on Annie Glynn, slightly north of Lucinda, which I wouldn't exactly characterize it as urban. I would characterize it more as suburban going into a rural area. Okay. I don't believe I have any other questions at this time. Thank you, Counsel, and thank you, Justice McLaren. Thank you, Your Honor. Thank you. Thank you, Justice Hutchinson. Justice Bridges, do you have any questions? Yes. Counsel, my question is, the traffic stop has been pointed out to occur in this case on October of 2017 and really was decided in December of 2018. Why wouldn't Officer Buckley have had a good faith basis to consider the stop being proper? Your Honor, first, it was not argued at the trial court level. Second, I would submit that under Leyendecker and Hackett, and even to an extent People v. Smith, that there was no lane deviation at all. Ms. Anderson was still within her lane, except on the outermost boundaries of it, and never crossed over going into the other lanes. Without the lane deviation, even under People v. Hackett, which is from 2012, there could be no reasonable suspicion here of improper lane use, because there had been cases that have addressed what is required prior to Mueller, and that there has to be a deviation from one's lane in the first place, and that just simply didn't occur here. Okay. The other question I have is, the trial court repeatedly talked about the credibility of the officer. My concern when you review the transcript in this case here, he found several contradictions that I thought would have impacted his decision, but he stuck with the credibility of the officer. For example, the time in which the vehicle was actually on the yellow line, he had some issues with the officer's testimony there, and the fact that the officer, in his initial examination, did not say the vehicle crossed over, but then when he was brought back for his re-questioning, he then specifically said the vehicle had, in fact, crossed the center line, and then the judge, having viewed the video, actually rebuked that by saying that, I viewed the video, and the tire never crossed the line. Do you think that was a factor in him deciding this case, or was it solely based on Mueller? I think that may have been a factor in the decision on this case. While the trial court judge did find the officer credible, and that's a differentiation between here and Mueller, there was some slight inconsistencies. But what can be borne out in the video was that this touching of the line was momentary, and it wasn't, as counsel would suggest, a situation where Ms. Anderson is driving along in heavy traffic with her vehicle touching the center line or a fog line to the point where it's causing danger to other vehicles. This is a different situation compared to what counsel has brought up. I think it may have been a factor in the judge's decision, though it's my understanding that there was no dash cam video available in Mueller, and Mueller, the officer, was corrected by the trial court for being flippant. Here, we have the benefit of the dash cam video, which can give the finder of fact, the trial judge, an accurate indication of what happened in addition to the testimony set forth. Thank you, Mr. Konowski, and thank you, Justice McClaren. No further questions. Thank you, Your Honor. Thank you. The questions were so good or so extraordinary that I don't have any other questions. So we will proceed to Mr. Taylor's rebuttal. Mr. Taylor. Thank you. Thank you, Your Honor. There are a few points I want to bring up on rebuttal. First, with regards to the good faith exception that was argued below. Yes, in the people's opening brief, we stated that the good faith exception was not argued below. Thus, we asked this court to still review it, even though it might have been forfeited, as forfeiture is a limitation upon the parties and not a limitation upon the court. In the reply brief, we noted that some of the language used by the prosecutor in arguing, even though the prosecutor never uses the phrase good faith or good faith exception, is still arguing that Officer Buckles' belief at the time was that the action he observed was a violation of the statute, which is what the good faith exception essentially is. Second, as for the fact that the PLA for Mueller was denied, that has no legal bearing whatsoever. What the Illinois Supreme Court chooses to take or not to take makes no difference as to whether that doesn't make any lower decision or that it was. And I believe, Justice Burgess, you had brought up about the testimony of Officer Buckle about the slight changes in testimony. That was most likely caused by time. When Officer Buckle initially testified in the very initial hearing, he said that the defendant was driving on the line and the trial court was able to review the tape, verified, found Officer Buckle to be a credible witness, and then denied defendant's motion because the law at the time, prior to Mueller, as understood by both the officer and the trial court, was that when you drove on the line that you were in violation of the proper lane usage statute. Even in the initial motion to reconsider by the defendant that was denied again because driving on the line was a violation, it wasn't until after Mueller came out that the trial court changed its ruling in order to allow... It was only after Mueller that the trial court changed its ruling. It was because of Mueller that the trial court granted this motion to suppress. Because with Mueller, there was a change in the law, a change that Officer Buckle did not know was going to happen at that time. Furthermore, Mueller itself can be limited to its facts. In that case, there is obvious and observable reason as to why that defendant could not remain as nearly as practical within their lane due to the conditions of the road itself. And that trial court in Mueller found that the officer testifying was not a credible witness. Here, with the testimony in the dash cam video, there was no reason to justify any deviation from within the lane, and no reason for this defendant to drive on the dividing line. And the trial court, as noted by Justice Bridges, that was found to be a credible witness. In conclusion, the people asked this court to reverse the trial court's granting the motion and to remand for further proceedings. Do you all have any questions for me? Thank you. Justice Hutchinson, do you have any questions? Yes, I do. I think just one. Mr. Taylor, if, in fact, there was no actual definition of a lane prior to Mueller, so we didn't have any anecdotal facts or definitions or any actual definitions in the statute, or in, as Justice McClaren noted, IDOT regulations, and in this particular appellate district there were at least three prior cases that talked about lanes, although not by definition and as nearly as practicable in Leyendecker and I think a Highland Park case, how exactly could the officer have been acting in good faith? Well, Your Honor, the language of the statute is to be nearly as practicable within the lane. The lack of a definition for a lane, especially the Mueller's definition, which includes the lines themselves, that actually indicates to Officer Buckle, as to his good faith, that when you're driving on the line, you're not nearly as practicable within your lane. It's just that it's the common belief, it seems, that if you're not between the lines, you're not in your lane. The lines themselves divide the lane. They're not a part of the lane. So the lack of definition that says that the lines are part of the lane would tell Officer Buckle that if you're on the line, you're not nearly as practicable within your lane, which would justify a stop. Did the prosecutor cite any case at the time of the initial decision to establish this definition or this use of lane and the crossing of the lines or touching of the lines? At the first hearing on the motion to suppress, I don't believe the prosecutor cited any particular case as to that touching, driving on the line itself was a violation. However, by the trial court's decision that denied that motion to suppress, it was understood to the trial court that driving on the line was a violation of the proper lane use statute. All right. And I want to clarify one of my statements. It wasn't the village of Highland Park. It was the village of Mundelein v. Bates. I had the right area, but too far south. All right. Thank you, Mr. Taylor. Thank you, Justice McLaren. Thank you, Justice. Justice Bridges, do you have any questions? I do not. Thank you. I have, I think, at least one. And that is the concept of what is a good faith belief, Mr. Taylor. And this came about by Justice Hutchinson's questions, because it seems to me that what you're arguing is that the police officer had a good faith belief that he had probable cause, as opposed to a good faith belief that there was a holding upon which he could base an opinion and come to a conclusion as to whether or not he had a good faith belief as to probable cause. And so is that a distinction without a difference? Or is there a difference and a substantial one that would suggest, at least as I think Justice Hutchinson's questions imply, that unless there is some case law that is directly on point, that has a holding in it, that the police officer isn't or doesn't have a good faith belief in the law, which is a faith in the holding, he would have a good faith belief that he has probable cause. And I don't know that there is ever a case that has been read by me or cited as authority that suggests that the good faith belief exception relates to whether or not a police officer thought he had probable cause. Well, Your Honor, the purpose of good faith exception is to not punish police officers who are acting in a manner that they think is justified by the law. What you're trying to suggest is that because no case has ever defined a lane, has explicitly specified that driving on the line was a violation of the proper lanes statute that would justify a stop, that no officer should have ever been able to stop any vehicle for driving on the line, and that Officer Buckle was just the last of a long line of individuals. However, that's not what the purpose of this exception is for. It's for allowing officers some leeway because they're not trained attorneys. They're trained as police officers to protect and serve the community. Until someone tells them, no, you shouldn't do that, they're going to be under the belief that, oh, this action is not going to be incorrect until someone tells me no. Obviously, there are some instances or situations where some actions are going to be obviously no, even though no one has specified that. But in this instance, in this case, especially since the trial court even confirmed the Officer Buckle's belief that, oh, this person was driving on the line, they were pulled over for it, and the trial court said, yeah, that's wrong, I'm denying the suppression motion. And also just as a minor thing, I believe the traffic stops are under Terry, which is reasonable suspicion, not probable cause. I think it's called an articulable suspicion. I have no further questions. Thank you, Counsel. Do Justice Hutchinson or Justice Bridges have any other questions based upon my questions or some other judges' questions? Justice Hutchinson, no, I don't at this time. Justice Bridges, I do not have any further questions. Thank you, Justice. Okay, thank you. There are no further questions. And we have heard from both parties to the fullest extent. We'll take the case under advisement and render a decision in apt time. Thank you very much. The oral argument is terminated. Thank you very much.